O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COAST PLAZA DOCTORS HOSPITAL, a California limited partnership,<br><br>              Plaintiff,<br><br>   v.<br><br>ARKANSAS BLUE CROSS AND BLUE SHIELD, an Arkansas corporation; BLUE CROSS BLUE SHIELD OF GEORGIA, INC., a Georgia corporation; HEALTH CARE SERVICE CORPORATION, d/b/a BLUE CROSS BLUE SHIELD OF TEXAS and d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS, an Illinois corporation; COMMUNITY INSURANCE COMPANY d/b/a/ ANTHEM BLUE CROSS AND BLUE SHIELD FO OHIO, an Ohio corporation,<br><br>             Defendants. | Case No. CV 10-06927 DDP (JEMx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>[Motion filed on 10/25/10] |

    Presently before the court is Plaintiff Coast Plaza Doctors Hospital (Coast Plaza)'s Motion to Remand to state court. After reviewing the parties' moving papers and hearing oral argument, the court grants the motion and adopts the following order.

**I.    Background**

Defendants are insurance companies organized in Arkansas, Georgia, Illinois, Texas, and Ohio. (Complaint ¶¶ 4-7.) Defendants are members of "BlueCard," a nationwide network of locally operated Blue Cross Blue Shield companies. (Id. ¶ 14.) Under the "BlueCard" program, Defendants' insureds can receive healthcare services in any BlueCard network member's service area. (Id. ¶ 15.) Medical providers who treat Defendants' insureds submit claims for payment directly to the local Blue Cross Blue Shield plan. (Id. ¶ 16.) For example, a member of an Arkansas Blue Cross Blue Shield insurance plan could receive treatment from a medical provider within Georgia Blue Cross Blue Shields's service area. The Georgia medical provider would then bill Arkansas Blue Cross Blue Shield. (See, e.g., id. ¶ 25.)

Local BlueCard members, including BlueCard members in California, are responsible for authorizing and pricing services to BlueCard members' insureds. (Id. ¶¶ 10, 12, 19.) Local BlueCard entities negotiate prices for services with "in-network" medical providers. (Id. 17.) Out-of-state BlueCard members enjoy the low "in-network" contract rates negotiated by the local entity. For example, when an "in-network" Georgia provider treats a member of an Arkansas Blue Cross Blue Shield plan, the Georgia provider bills Arkansas Blue Cross Blue Shield at the "in-network" rate negotiated by Georgia Blue Cross Blue Shield.

Many medical providers, however, choose to remain "out-of-network." (Id. ¶ 18.) "Out-of-network" providers do not contract with BlueCard entities, and charge BlueCard entities more than "in-

network" providers do. (Id. ¶ 19.) Plaintiff Coast Plaza is an "out-of network" provider. (Id. ¶ 18.)

Coast Plaza provided medical treatment to Defendants' insureds. (Id. ¶ 1.) The insureds all agreed to have their insurance companies, Defendants, pay Coast Plaza directly. (Id. ¶ 22). Defendants' insureds therefore all assigned their BlueCard benefits to Coast Plaza. (Id.) Instead of issuing payment for medical services to Coast Plaza, however, Defendants issued checks to the BlueCard insureds who received treatment at Coast Plaza. (Id. at 23.) Coast Plaza is typically unable to collect those payments from Defendants' insureds. (Id. ¶ 23.)

Coast Plaza filed suit against Defendants in California state court for breach of contract, violations of various state statutes, services rendered, and declaratory relief. Coast Plaza alleges that Defendants intentionally paid patients, rather than Coast Plaza, in retaliation for Coast Plaza's refusal to become an in-network provider. (Id. ¶ 20.) Defendants removed the matter to this court, and Coast Plaza now moves to remand to state court.

**II. Legal Standard**

A defendant removing on diversity grounds bears the burden of establishing that the amount in controversy exceeds $75,000. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 699 (9th Cir. 2007). Remand may also be ordered for lack of subject matter jurisdiction or for "any defect in removal procedure." 28 U.S.C. § 1447(c). Generally, there is a strong presumption in favor of remand. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403-04 (9th Cir. 1996). The removal statutes are construed restrictively, and doubts about removability are resolved in favor

3

of remand. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

**III. Discussion**

A. Amount in Controversy

Coast Plaza first argues that there is no diversity jurisdiction because the amount in controversy is less than $75,000. (Motion at 3.) As an initial matter, the court looks to the amount in controversy with respect to each defendant. Claims against multiple defendants may only be aggregated to satisfy the amount in controversy requirement if the defendants are jointly and severally liable. United States v. S. Pac. Transp. Co., 543 F.2d 676, 683 (9th Cir. 1976). That is not the case here.

The complaint does not clearly describe the amount sought from each defendant. The complaint refers, with respect to each defendant, two different amounts: the amount billed for medical services and the amount actually paid out to patients. The difference is substantial. For example, the complaint describes one bill for $11,951.10, of which only $704.81 was paid to the patient. (Complaint ¶ 25(d).) The complaint does not specify how many claims are at issue, let alone the total value of those claims.

Nevertheless, Defendants bear the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Guglielmino, 506 F.3d at 699. Defendants have failed to meet this burden. First, the complaint makes numerous references to "payments" and "checks." These references suggest that Coast Plaza seeks amounts paid out to patients, rather than

4

the total amount billed. More tellingly, Coast Plaza has submitted evidence that it indeed seeks only the amounts actually paid out to Defendants' insureds, and not the total amount billed.[1] (Corrected Declaration of Katherine R. Miller ¶ 6).
The preponderance of the evidence, therefore, establishes that Coast Plaza seeks less than $75,000 from each defendant. Accordingly, this court does not have diversity jurisdiction.

    B.   ERISA Preemption

Defendants also argue that this court has jurisdiction because Coast Plaza's state law claims are preempted by Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1132(a). (Opp. at 7.) A state claim "is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B) and (2) where there is no other independent legal duty that is implicated by a defendant's actions." Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 946 (9th Cir. 2009) (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004). Section 502(a)(1)(B) allows participants or beneficiaries to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

---

[1] The court rejects Defendants' argument that Coast Plaza's refusal to sign a sworn affidavit that it seeks less than $75,000 proves that the amount in controversy requirement has been met. (Opp'n at 1 n.1). Defendants fail to mention that their proposed stipulation included attorneys fees. (Miller Dec. ¶ 8.) While attorneys fees <u>may</u> be considered when an underlying statute authorizes such fees, Defendants point to no statutory basis for the grant of attorneys fees. See Galt v. JSS Scandinavia, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

5

It is well established that "ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045, 1051 (9th Cir. 1999) (citing The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008 (9th Cir. 1995) (internal quotation omitted). Here, the parties do not dispute that ERISA plan beneficiaries assigned their rights to Plaintiff. However, the fact that a medical provider has received an assignment and can potentially bring an ERISA suit "provides no basis to conclude that the mere fact of assignment converts the Providers' [non-ERISA] claims into claims to recover benefits under the terms of an ERISA plan." Marin Gen. Hosp., 581 F.3d at 949 (internal quotation and alteration omitted). The court's task, therefore, is to determine whether Plaintiff's complaint implicates "some other legal duty beyond that imposed by an ERISA plan." Id.

The Ninth Circuit has held that ERISA does not preempt claims founded upon a contractual relationship between an insurer and a medical provider. In Blue Cross, "in-network" medical providers who had entered into agreements directly with the insurer challenged the insurer's changes to reimbursement rates. Blue Cross, 1087 F.3d at 1049. The insurer argued that ERISA preempted the providers' claims because the providers' right to payment were dependent on assignments of ERISA plan beneficiaries. Id. at 1050. The court disagreed, holding that the providers' claims arose not from the ERISA plan, but from the providers' independent contractual relationship with the insurer. Id. at 1051. In so

6

holding, the court observed that "the bare fact that the [ERISA] Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." Id.; See also Catholic Healthcare West-Bay Area v. Seafarers Health Benefit Plan, 321 Fed.Appx. 563, 564 (9th Cir. 2008) ("[W]here a third-party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated and the claim is not preempted"); Hoag Mem'l Hosp. v. Managed Care Administrators, 820 F.Supp. 1232 (C.D. Cal. 1993) (concluding that ERISA did not preempt provider's negligent misrepresentation claim against an insurer); Doctors Med. Center of Modesto, Inc. v. The Guardian Life Insurance Co. of America, 2009 WL 179681 (E.D. Cal. 2009) (concluding ERISA did not preempt provider's intentional interference with contractual relations claim against insurer).

Defendants argue that these ERISA preemption cases do not control here in light of Cleghorn v. Blue Shield of California, 408 F.3d 1222 (9th Cir. 2005). (Opp. at 10). In Cleghorn, the Ninth Circuit held that a plaintiff's claim for reimbursement for medical care was preempted by ERISA because "[a]ny duty or liability that Blue Shield had to reimburse him would exist here only because of Blue Shield's administration of ERISA-regulated benefit plans." Cleghorn, 408 F.3d 1222, 1226 (internal quotation and alteration omitted). Cleghorn, however, is distinguishable from the instant case. Critically, Cleghorn involved an individual plaintiff whose claim for medical benefits under an ERISA plan was denied by the

7

insurer. <u>Cleghorn</u>, 408 F.3d at 1223. The court found that, despite the plaintiff's artful pleading, the "only factual basis for relief pleaded in [the individual plaintiff's] complaint is the refusal of Blue Shield to reimburse him for the emergency medical care he received," and that such a claim "cannot be regarded as independent of ERISA." <u>Id</u>. at 1226.

Here, in contrast, Plaintiff, has implicated an independent legal relationship; namely, an implied-in-law contract between a medical provider and insurers. Defendants assert that such a relationship does not constitute a "direct" contractual relationship of the same nature as those present in "in network" provider agreements or oral contracts of the type at issue in <u>Hoag</u>. California courts, however, have held that medical providers and insurers are directly linked by an implied contract. <u>Bell v. Blue Cross of California</u>, 131 Cal.App.4th 211, 218 (2005). The <u>Bell</u> court explained that medical providers must render emergency services without regard to a patient's ability to pay. <u>Bell</u>, 131 Cal.App.4th at 220. Under California Health & Safety Code Sec. 1371.4, an insurer must "reimburse providers for emergency serves and care provided to its enrollees." Cal. Health & Safety Sec. 1371.4(b); <u>Bell</u>, 131 Cal.App.4th at 220. The court therefore concluded that medical providers have an "implied-in-law right to recover for the reasonable value of their services." <u>Bell</u>, 131 Cal.Appp.4th at 221; <u>See also</u> <u>Prospect Med. Group, Inc. v. Northridge Emergency Med. Group</u>, 45 Cal. 4th 497, 507-508 (2009) ([D]octors may *directly* sue [insurers] to resolve billing disputes . . . ") (emphasis added). Plaintiff's Second Cause of Action for Breach of Implied-In-Law contract implicates a legal duty owed by

8

Defendants-insurers that is independent of any ERISA-governed plan. ERISA does not, therefore, completely preempt Plaintiff's state law claims.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion to remand is GRANTED. Each party shall bear its own costs. In addition, the Motions to Dismiss (docket numbers 7, 10 and 13) are vacated.

IT IS SO ORDERED.

Dated: August 25, 2011

DEAN D. PREGERSON
United States District Judge

9